NO. 07-03-0109-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 2, 2004

_____


DIRK RALPH GORHAM, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 14,835-A; HONORABLE RICHARD DAMBOLD, JUDGE

_____

**MEMORANDUM OPINION**

Before QUINN and REAVIS and CAMPBELL, JJ.

Following appellant Dirk Ralph Gorham's plea of not guilty, a jury convicted him of two counts of aggravated sexual assault. The trial court then found the allegations in the enhancement paragraphs of the indictment to be true and sentenced appellant to 40 years confinement on each count, to be served concurrently. By his first issue, appellant

contends the evidence was legally and factually insufficient to sustain a verdict of guilty on count one of the indictment.[1] With his second issue, appellant asserts that "[a]n inordinate amount of hearsay testimony was admitted over [his] objection without proper justification for its admission being required by the court." We affirm.

On November 29, 2002, the victim, appellant's twelve year old step-daughter, told her friend Amanda that, earlier that morning, appellant had "touched her where he was not supposed to." Specifically, the victim said appellant had touched her chest and in between her legs. According to the victim, after the incident, she had bled a little on her underwear. Additionally, the victim relayed that, either on that day or a couple of days before, appellant had taken her hand and put it on his penis, and that "he had stuck it [his penis] in her rear." The victim indicated that her stomach hurt as a result of the incident.

Immediately after her conversation with the victim, Amanda reported to her mother, Susan, what the victim had told her. Within minutes Susan and Amanda went to the victim's house where they located the victim, who was babysitting her little brother. While Amanda waited inside the house with the victim's brother, Susan and the victim sat in Susan's car and talked. During the course of their hour long conversation, the victim informed Susan that appellant had come into her room that morning and gotten in bed with her. He then took her hand and put it on his penis. The victim went on to relate that

_____

[1] Because appellant does not contend that the error extends to his conviction under count two, we will limit our review to the evidence regarding the offense charged in count one.

2

appellant "had tried to put his thing in her butt." In addition to that morning's incident, the victim also recalled an episode in which appellant had put his fingers inside her vagina causing it to bleed. The victim asked Susan not to tell anyone about their conversation because she wanted to tell her mother about the abuse first. Later that day, Susan telephoned the victim, who indicated she had told her mother about the abuse. Nevertheless, the victim asked Susan to continue to keep their conversation in confidence. The victim repeated that request the next day. On December 1, 2002, however, Susan reported the sexual assaults to the police.

Child Protective Services workers responded to the victim's school on December 2, 2002, and transported her to the children's advocacy center where she was interviewed. During the videotaped interview, the victim denied that her step-father had ever touched her inappropriately. Rather, she claimed that, in response to a dare by a friend, she had lied to Amanda about the abuse. When the investigating officer confronted the victim about the conflicts between her statement to the interviewer that day and the allegations she made to Amanda and Susan on November 29, the victim maintained "that it was all a truth or dare game."

After the interview, the victim talked to Michele Gorday, a sexual assault nurse examiner who performed an exam on the victim. During the history phase of the exam, the victim explained to Gorday that she had, in fact, been abused by appellant. According to the victim, she did not feel comfortable divulging that secret earlier because she did not

3

know the interviewer or the detective, and "[t]hey had a video camera and a recorder on." The victim then confided that appellant had put her hand on his penis and tried to stick his penis in her bottom. The victim explained that her mother had made her promise not to tell anyone about the abuse. Apparently, her mother wanted to wait to discuss the matter until her mother-in-law went home so as not to "hurt her [the mother-in-law]."

After Gorday completed taking a history from the victim, she conducted a sexual assault exam. The exam revealed that the victim had suffered traumatic injuries to her sexual organ, which, according to Gorday, were caused by "penetration of the vagina." The exam failed to reveal any trauma to the victim's anus; however, Gorday testified at trial that she finds such injuries "[v]ery rarely." Because the anus is "a very accommodating muscle," it heals rapidly; thus, it is "not unusual to not find trauma." Appellant was arrested on December 6, 2002.

By his first issue, appellant maintains the evidence is legally and factually insufficient to support his conviction as to count one. Specifically, he contends that "[a] full reading of the testimony concerning Count One from those having direct knowledge of the night of November 29, 2002, there can (sic) have been no credible opportunity for [him] to have had access to [the victim] to commit the offense alleged." We disagree. In reviewing the legal sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the verdict, and ask whether a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,

4

99 S. Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 ( Tex.Cr.App. 1999), *cert denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 44 U.S. at 319.

In reviewing the factual sufficiency, we examine all of the evidence neutrally and ask whether proof of guilt is so obviously weak or greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *See* King v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). We must, however, remain cognizant of the factfinder's role and unique position–one the reviewing court is unable to occupy. *See* Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App. 2000). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex.Cr.App. 2001). Finally, a proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex.Cr.App. 2003).

In support of the sufficiency challenges, appellant relies upon the victim's continued recantation of the sexual abuse allegations at trial and the testimony of his mother. At trial, the victim asserted that, on the night before the offense, she had slept in her brother's room with him and her grandmother, appellant's mother, because her puppy had "made a mess" in her room. The grandmother's testimony corroborated that story. It follows, appellant claims, that because the victim was not alone in the room, he could not have committed the assault without disturbing either the victim's grandmother or brother. Appellant's assertion, however, fails to appreciate the jury's authority to reconcile equally competing theories of the case. *Goodman*, 66 S.W.3d at 287. Indeed, the jury was entitled to disbelieve the victim's trial testimony denying the abuse and to credit, instead that of Amanda, Susan, and Gorday regarding the allegations of abuse she made to them shortly after the offense. Likewise, it was within the province of the jury to discount the grandmother's testimony, especially in light of her potential bias as appellant's mother. *See Chambers*, 805 S.W.2d at 461.

Appellant also suggests that the only evidence adduced at trial establishing that he caused the victim's anus to contact his sexual organ was that presented by Susan. As delineated above, however, Amanda and Gorday both testified that the victim told them appellant attempted anal penetration on the morning of November 29, 2002.[2] In short, the State presented ample evidence to establish each of the elements of count one beyond

---

[2]As discussed below, Amanda's hearsay statements regarding what the victim told her on the day of the offense were admitted without objection.

6

a reasonable doubt. Similarly, we conclude that neither the inconsistencies in the witnesses' testimony nor the victim's recantation rendered the proof of appellant's guilt so obviously weak or greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See King*, 29 S.W.3d at 563. Appellant's first issue is overruled.

With his second issue, appellant complains the trial court abused its discretion in admitting certain hearsay statements made by Amanda regarding what the victim told her on the day of the offense about her stomach hurting. We disagree. To preserve for appellate review error in the admission of evidence, a criminal defendant must make a timely and reasonably specific objection. Tex. R. App. P. 33.1(a); Ramirez v. State, 74 S.W.3d 152, 154 (Tex.App.–Amarillo 2002, pet. ref'd). Furthermore, the objection at trial must comport with the error complained of on appeal. *Id*. A general objection on the basis of hearsay preserves nothing for review. Jones v. State, 843 S.W.2d 92, 98 (Tex.App.–Dallas 1992, pet. ref'd.). And, an objection made after the objectionable testimony has been given is untimely; thus, any potential error is waived. Amuson v. State, 928 S.W.2d 601, 607 (Tex.App.–San Antonio 1996, pet. refd.). Finally, where a defendant does not request a running objection, he is required to object each and every time the objectionable evidence is offered. *See* Ethington v. State, 819 S.W.2d 854, 858 (Tex.Cr.App. 1991).

The record reveals that trial counsel made only three objections to the challenged testimony; however, each of them were generic, nonspecific hearsay objections.

Furthermore, appellant failed to object to other questions by the State concerning the same subject matter and calling for hearsay responses. Neither did appellant request a running objection to any evidence related to what the victim told Amanda about her stomach hurting on the day of the offense. Thus, appellant has failed to preserve error regarding the admission of that evidence. Issue two is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.